IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 23-cr-00222-GPG

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. NATHAN SUGAR,
2. JONATHAN ARVAY, and
3. JOVAN WALKER.

    Defendants.

## INDICTMENT

The Grand Jury charges:

### GENERAL ALLEGATIONS

### Crypto Arcades and Blackstone Digital Assets

    1.    Beginning no later than 2018, NATHAN SUGAR owned and operated a business known as Crypto Arcades in Pueblo, Colorado. Crypto Arcades was part of a gambling business consisting of a network of gambling establishments in the District of Colorado.

    2.    From 2018 through at least February 24, 2022, Crypto Arcades operated as an "arcade" that allowed customers to play various games on applications downloaded on personally-owned electronic devices, such as a cellular telephone. These application-based games included, among others, slot machines, blackjack, and "fish games," which are games where multiple players shoot at animated fish or other creatures. At various times between 2018 and 2022, Crypto Arcades also allowed

customers to play electronic games at tables and machines set up inside the premises.

3. To play the application-based games, customers drove up to a drive-through window at Crypto Arcades where an employee of Crypto Arcades set up accounts for the customers on an application ("app") downloaded to the customers' devices. The customers then gave cash to the employee to purchase credits for their newly-created account. Once credits were loaded onto customers' accounts, the customers could play games in the app on their devices. Once in the app, customers could wager credits to play the various games. When customers were done playing, they were required to go back to the Crypto Arcades window and tell an employee that they wished to "redeem" the "tickets" on their account. The employee then generated usernames and passwords for the customers and transferred the customers' credits into a purported cryptocurrency called "ODAC," or Obsidian Digital Asset Coin. In order to convert ODAC to U.S. currency, customers would then visit a storefront next door, connected to Crypto Arcades, called Blackstone Digital Assets, which was also owned and operated by SUGAR. Inside Blackstone Digital Assets was a machine called a cryptocurrency teller machine, or "CTM," that allowed customers to input their usernames and passwords to access their ODAC. At this CTM, customers could exchange ODAC for U.S. currency, less a transaction fee, which was collected by SUGAR.

4. Crypto Arcades' in-store games operated as described in paragraphs 9 and 11, *infra*.

5. Although SUGAR and his co-conspirators referred to ODAC as a "cryptocurrency" and the machines at which ODAC could be exchanged for cash as

CTMs, ODAC had no value outside of the gambling establishments owned and operated by SUGAR and his co-conspirators. Within the ecosystem of these gambling establishments, one ODAC was worth $1 and could not be exchanged for anything other than U.S. currency. A customer's ODAC could not be transferred to another customer's wallet, nor could it be accessed at all outside of the CTM associated with Crypto Arcades.

6. For a period of time relevant to this indictment, SUGAR's co-conspirator ("CC-1") helped manage Crypto Arcades. At all times relevant to this indictment, SUGAR involved at least four other individuals in the operation of Crypto Arcades.

## Other Gambling Establishments

7. SUGAR worked with JONATHAN ARVAY, JOVAN WALKER, CC-1, CC-2, CC-3, CC-4, and others known and unknown to the Grand Jury to conduct, finance, manage, supervise, direct, or own a gambling business consisting of a network of establishments in the District of Colorado. In addition to Crypto Arcades, among these establishments were Hot Tamale Arcade, COS Arcade, Pueblo Rivers Arcade, Player One Arcade, the Fish Tank, the Fish Tank II, MA Arcade, and Table Station. These establishments were located and owned as follows:

| TABLE 1 | | |
| --- | --- | --- |
| Establishment | Location | Owner/operator |
| Hot Tamale Arcade | Colorado Springs, CO | CC-2, CC-3, CC-4 |
| COS Arcade | Colorado Springs, CO | CC-2, CC-3, CC-4 |
| Pueblo Rivers Arcade | Pueblo, CO | CC-2, CC-3, CC-4 |
| Player One Arcade | Denver, CO | CC-2, ARVAY |
| Fish Tank | Lakewood, CO | CC-2, WALKER |
| Fish Tank II | Greeley, CO | CC-2, WALKER |

| MA Arcade | Colorado Springs, CO | CC-2 |
| Table Station | Aurora, CO | CC-2 |

8. SUGAR provided resources like gaming equipment, online platforms, CTMs, and technical support to each of the establishments listed in Table 1 in exchange for a percentage of each establishment's profits. In order to collect his share, SUGAR sent "invoices" to each establishment on a regular basis. CC-1 assisted in the operation of the gambling business by, among other things, repairing gambling machines and CTMs and ensuring that each establishment had enough credits for operation of online gambling platforms.

9. The establishments described in Table 1 each operated in largely the same way, as follows. Each of the locations allowed customers to gamble at physical gaming machines in the establishment. In particular, each location had at least one "table game," which is a large table around which customers sat to play a game at the same time, which was displayed on a screen embedded in the table. Customers manipulated controls to shoot at animated creatures, such as fish or buffalo. Generally, during game play, the player set the value of a shot by wagering credits; the higher the value of the shot, the higher the potential payout in credits to the customer. The animated creatures had different payout values when eliminated by a player.

10. In addition to table games, many of the locations in Table 1 also offered other games, such as slot machine emulators.

11. In order to play games at the locations described in Table 1, customers first visited an employee of the establishment to set up an account. If the customer wanted to play the physical game tables, the employee would provide the customer with

4

a plastic card onto which the customer could load credits by inserting cash into a machine inside the establishment or by visiting an employee at the location. Some establishments allowed customers to load credits with a credit card. The plastic card, now loaded with credits purchased with money, could be used to play the table games and other machines at the establishment.  When customers finished playing, they could cash out their winnings, if any, as follows. Winnings were referred to as "tickets."  First, customers returned to an employee of the establishment and asked to "redeem" their tickets for a prize.  At some locations, prizes included gaming systems, other electronics, and toys. The most popular prize, however, was ODAC.  If a customer chose ODAC as a prize, the employee would create a username and password for the customer and transfer the customer's credits into ODAC to that newly-created account. Customer would then use their usernames and passwords to exchange the ODAC for U.S. dollars at one of SUGAR's CTMs located on, or near, the arcade premises.  Each location had its own rules for how much the CTM would dispense per customer per day. For example, some CTMs would dispense up to $500 per customer, per day, less a transaction fee, which was collected by SUGAR.

12.     Each of the establishments described in Table 1 also offered gambling to customers via an app downloaded to the customer's personal device.  To play these games, customers would visit an employee at the establishment, open an account, and purchase credits that the employee would load onto the customers' accounts.  The customers could then pay credits to play games on the app in an effort to win tickets. When customers were ready to cash out, they would be required to again visit an employee of the establishment, who would convert the tickets to ODAC.  Customers

5

could then exchange the ODAC for U.S. currency at one of SUGAR's CTMs on, or near, the arcade premises, less a transaction fee, which was collected by SUGAR.

13. Paragraphs 1-12 of these General Allegations are hereby reincorporated as to all Counts charged below.

## COUNT 1

14. From in or around 2020 through on or about February 24, 2022, in the State and District of Colorado, the defendants, NATHAN SUGAR, JONATHAN ARVAY, JOVAN WALKER, CC-1, CC-2, CC-3, CC-4, and others known and unknown to the Grand Jury, did conduct, finance, manage, supervise, direct, or own all and part of an illegal gambling business, which gambling business was in violation of the laws of the State of Colorado, to wit, C.R.S. §§ 18-10.5-103 and 18-10-103, and which involved five or more persons who conducted, financed, managed, supervised, directed, and owned all or part of such business, and which remained in substantially continuous operation for a period in excess of thirty days and had a gross revenue of $2,000 in any single day.

All in violation of Title 18, United States Code, Section 1955.

## COUNT 2

15. From in or around 2020 through on or about February 24, 2022, in the State and District of Colorado, the defendants, NATHAN SUGAR, JONATHAN ARVAY, JOVAN WALKER, CC-1, CC-2, CC-3, CC-4, and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate, and agree, with interdependence, to commit a federal offense, namely, a violation of Title 18, United State Code, Section 1955 in which SUGAR, ARVAY, WALKER, CC-1, CC-2,

6

CC-3, CC-4, and others known and unknown to the Grand Jury, did conduct, finance, manage, supervise, direct, and own all and part of an illegal gambling business, as described in Count One of this Indictment.

All in violation of Title 18, United States Code, Section 371.

## Overt Acts

16. In furtherance of the conspiracy and to achieve its objectives, members of the conspiracy committed the following overt acts, among others, in the District of Colorado, and elsewhere:

    a. On or about December 8, 2020, CC-2, CC-3, and CC-4 signed documents associated with a bank account for Hot Tamale Arcade Inc.

    b. On or about August 30, 2021, SUGAR's company, Obsidian Innovations, sent a "profit share" invoice to Hot Tamale.

    c. On or about September 1, 2021, the Hot Tamale Arcade Inc. bank account issued a check for $12,364.67 to "Obsidian Innovations (Crypto Arcades)" with a memo for "8/30/21 Invoice," signed by CC-2.

    d. On or about May 28, 2021, WALKER and CC-2 signed documents associated with a bank account for The Fish Tank Inc.

    e. On or about August 16, 2021, SUGAR's company, Obsidian Innovations, sent a "profit share" invoice to The Fish Tank.

    f. On or about August 18, 2021, Fish Tank's bank account issued a check for $26,404.00 to "Obsidian Innovations (Crypto Arcades)" with a memo for "Invoice," signed by WALKER.

    g. On or about June 28, 2021, ARVAY filed Articles of Organization

with the Colorado Secretary of State for Player One Ltd.

  h. On or about January 10, 2022, SUGAR's company, Obsidian Innovations, sent a "profit share" invoice to Player 1 Arcade.

  i. On or about January 12, 2022, Player One Arcade INC.'s bank account issued a check for $13,778.94 to "Obsidian Innovations (Crypto Arcades)" with a memo stating "1/3-1/9/22 Invoice."

## COUNT 3

  17. On or about September 8, 2020, in the State and District of Colorado, the defendant, NATHAN SUGAR, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, that is, a violation of Title 18, United States Code, Section 1955, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in that SUGAR instructed his bank to wire $713,072.31 from an account in the name of "Obsidian Innovations" in order to purchase a house in Penrose, Colorado, in the name of a business associated with another individual.

  All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT 4

  18. On or about January 18, 2022, in the State and District of Colorado, the defendant, NATHAN SUGAR, did knowingly conduct and attempt to conduct a financial

transaction affecting interstate and foreign commerce which involved the proceeds of a specified unlawful activity, that is, a violation of Title 18, United States Code, Section 1955, with the intent to promote the carrying on of the specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in that SUGAR directed CC-1 to wire $27,915.00 from a bank account in the name of "Crypto Arcades" to a company to purchase 18 new "fish gameboards."

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

## COUNT 5

19.     On or about April 8, 2021, in the State and District of Colorado, the defendant, NATHAN SUGAR, did knowingly engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, a violation of Title 18, United States Code, Section 1955, in that SUGAR directed CC-1 to wire $82,084.91 from an account in the name of "Crypto Arcades" to fund the purchase of property in Canon City, Colorado.

All in violation of Title 18, United States Code, Sections 1957(a) & 2.

## FORFEITURE ALLEGATION

20.     The allegations in Counts One and Two of this Indictment are hereby realleged and incorporated by reference for purposes of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 1955(d) and Title 28, United States Code, Section 2461(c).

21. Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1955 and 371 set forth in Counts One and Two of the Indictment, the defendants, NATHAN SUGAR, JONATHAN ARVAY, and JOVAN WALKER shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

22. The allegations in Counts Three, Four, and Five of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1).

23. Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Sections 1956 or 1957, as alleged in Counts Three, Four, and Five of the Indictment, the defendant, NATHAN SUGAR, shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property.

24. If any of the property described above, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

                              TRUE BILL:


                             <u>Ink signature on file in Clerk's Office</u>
                             FOREPERSON

COLE FINEGAN
United States Attorney

By: *s/ Andrea Surratt*
Andrea Surratt
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California St., Ste. 1600
Denver, CO 80202
Telephone: 303-454-0200
Fax: 303-454-0406
E-mail: andrea.surratt@usdoj.gov
Attorney for Government